# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANTANDER SECURITIES LLC, et al. : | |
|     Plaintiffs, : | |
| : | |
|     v. : | Civ. No. 17-317 |
| : | |
| GARY GAMACHE, : | |
|     Defendant. : | |
| : | |

**Diamond, J.**                                                                                                                                                 **April 3, 2017**

## <u>M E M O R A N D U M</u>

Plaintiffs Santander Securities LLC and Santander Bank, N.A. allege that former employee Gary Gamache misappropriated their confidential information and improperly solicited their customers after taking a position with non-party Citizens Securities, Inc. Acting at the direction of his new employer, Gamache moves to disqualify Belcher Fitzgerald LLP, Santander's counsel, alleging that the firm had previously represented Citizens against its former employees in similar restrictive covenant litigation. Even if Gamache has standing to seek disqualification, because Belcher Fitzgerald's prior representation of Citizens is not substantially related to the present dispute, I will deny the Motion.

## I.     BACKGROUND

From 2009 to November 2016, Santander (and its corporate predecessors) employed Gamache as a financial advisor. (Verified Compl., Doc. No. 1, ¶ 5.) As a condition of his employment, Gamache executed Santander's "Enterprise-Wide Code of Conduct and Ethics" and "Representative Employment Agreement." (Verified Compl. ¶¶ 15, 23 & Exs. A, B.) Both documents required Gamache to keep Santander's corporate information confidential, prohibited the information's personal use, and obligated the return of confidential information upon

Santander's request. (Id., Ex. A, §§ 8.2, 8.3; Ex. B, § 7.) The Representative Agreement also prohibited Gamache from soliciting former clients for twelve months after the termination of his Santander employment. (Id., Ex. B, § 8(b).)

In November 2016, Gamache resigned from Santander and began work as a financial advisor at Citizens, Santander's direct competitor. (Verified Compl. ¶¶ 38-39.) Santander alleges that Gamache kept proprietary customer lists and other confidential information and improperly solicited his Santander clients once he began at Citizens. (See Verified Compl. ¶¶ 41-55). Accordingly, on January 23, 2017, Santander brought the instant five-count Complaint against Gamache, alleging breach of the Code of Conduct and the Representative Agreement, breach of fiduciary duty, trade secret misappropriation, unfair competition, and violation of the Defend Trade Secrets Act. (Verified Compl. ¶¶ 58-78); 18 U.S.C. § 1836; 12 Pa. C.S. § 5302. That day, Santander also initiated Financial Industry Regulatory Authority arbitration proceedings, bringing the same claims against Gamache as well as trade secret misappropriation, unfair competition, tortious interference, and unjust enrichment claims against Citizens. (See Belcher Aff., Doc. No. 18-1, Ex. 1.)

Santander initially asked me to enjoin Gamache from using its confidential information and soliciting its clients pending the resolution of the FINRA arbitration. (Doc. No. 4.) On February 1, 2017, the Parties resolved the preliminary injunction request and agreed to stay this litigation and proceed with the FINRA arbitration after I determined whether Belcher Fitzgerald should be disqualified. (Doc. No. 17.)

## II. MOTION TO DISQUALIFY

Although Citizens is not a party before me, it readily acknowledges its displeasure with Belcher Fitzgerald. According to Citizens' "Senior Employment Counsel," "[t]his is the first

2

instance [the Belcher firm] has appeared in a matter in an adversarial position to [Citizens]." (Peterson Aff., Doc. No. 15-2, ¶¶ 1, 21.) Disavowing any "tactical" motivation, Citizens directed its counsel, Jackson Lewis—the same firm that represents Gamache—"to bring the instant motion [to disqualify]." (Id. ¶¶ 23, 25.) On February 1, 2017 (the same day the Parties resolved the injunction), Gamache moved to disqualify the Belcher firm. (Doc. No. 15.) The matter has been fully briefed. (Doc. Nos. 18, 19.)

The material facts are undisputed. From 2009 to February 2015, the Belcher firm represented Citizens in "non-customer litigation matters (including all TRO and FINRA matters)" that were similar to the instant dispute. (Peterson Aff. ¶¶ 5, 8; Belcher Aff. ¶ 3.) Between 2013 and 2015, the Belcher firm represented Citizens in some ten FINRA non-competition arbitrations. (Peterson Aff. ¶ 10.) The firm also authored numerous cease-and-desist letters that did not lead to litigation. (Id. ¶ 15.) Through their representation of Citizens in restrictive covenant litigation, the firm acquired "intimate knowledge of [Citizens'] processes and proprietary information," including information regarding its "trade secrets," "customer lists," "corporate recruitment," "counseling of new employees relative to their non-competition agreements," "financial reports," and related information. (Id. ¶ 12.) The firm also learned Citizens' "methods of negotiating settlements," "litigation strategies," and its litigation "playbook." (Id. ¶¶ 12, 26.) Citizens terminated the firm in mid-2015. (Id. ¶ 18.)

Gamache does not contend that the Belcher firm ever represented him or obtained any confidential information from him. Nor does he contend that the firm had access to confidential communications between Gamache and Citizens or any confidential information concerning Citizens' decision to hire him. Gamache does not contend that during its representation of Citizens the firm acted adversely to Santander. On the contrary, the Belcher firm represented

3

Santander in restrictive covenant matters at the same time it represented Citizens. (Belcher Aff. ¶ 4.)

### III. LEGAL STANDARDS

"Federal courts have inherent authority to supervise the conduct of attorneys appearing before them." Jordan v. Phila. Hous. Auth., 337 F. Supp. 2d 666, 671 (E.D. Pa. 2004). I will apply the Pennsylvania Rules of Professional Conduct, which this Court has adopted. Id. (quoting Henry v. Del. River Joint Toll Bridge Comm'n, No. 00-6415, 2001 WL 1003224, at *1 (E.D. Pa. Aug. 24, 2001)); Local R. Civ. P. 83.6(IV)(B).

"Disqualification is a harsh measure and is generally disfavored by the court" because a party's "choice of counsel is entitled to substantial deference" and because motions to disqualify are often brought for tactical reasons. AgSaver LLC v. FMC Corp., No. 11-997, 2011 WL 2274178, at *3 (E.D. Pa. June 9, 2011); Com. Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1203 (E.D. Pa. 1992). "[A] court should disqualify an attorney only when it determines, on the facts of the particular case," after "consider[ing] the ends that the disciplinary rule is designed to serve and any countervailing policies," that "disqualification is an appropriate means of enforcing the applicable disciplinary rule." Graphix Hot Line, 808 F. Supp. at 1203 (quoting United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980)). "To disqualify opposing counsel, the moving party must clearly show that continued representation would be impermissible." AgSaver LLC, 2011 WL 2274178, at *3 (quoting Reg'l Employers' Assur. Leagues Voluntary Employees' Beneficiary Ass'n ex rel. PennMont Ben. Servs., Inc. v. Castellano, No. 03-6903, 2005 WL 856928, at *2 (E.D. Pa. Apr. 12, 2005)). "Nonetheless, doubts regarding the existence of an ethical rule violation should be construed in favor of disqualification." Id.

Pennsylvania Professional Conduct Rule 1.9, which governs disqualification, provides as

follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

Pa. R.P.C. 1.9(a).

To prevail here, Gamache must show: "(1) that a past attorney/client relationship existed which was adverse to a subsequent representation by the law firm of the other client; (2) that the subject matter of the relationship was substantially related; and (3) that a member of the law firm, as attorney for the adverse party, acquired knowledge of confidential information from or concerning the former client, actually or by operation of law." Estate of Pew, 655 A.2d 521, 545-46 (Pa. Super. 1994); accord Jordan, 337 F. Supp. 2d at 672 (party seeking disqualification must show: "(1) the former representation is the same or substantially related to the present matter, (2) the interests of counsel's current client are materially adverse to the interests of the former client, and (3) the former client has not consented.").

## IV. DISCUSSION

### A. Standing

Neither side has explicitly raised the issue of standing. (See Pls.' Mem., Doc. No. 18, at 5 n.4.) I am nonetheless compelled to note that even though the Belcher firm's former client, Citizens, may be pulling the strings, Citizens is not actually before me. The Belcher firm never represented Gamache, who is actually seeking the firm's disqualification. Whether a non-client may seek opposing counsel's disqualification is far from clear. The Third Circuit has "[a]ssum[ed] without deciding that a motion to disqualify must be brought by a former client." In re Corn Deriv. Antitrust Litig., 748 F.2d 157, 161 (3d Cir. 1984). The Circuit has also, however, "assumed without deciding that [non-client] defendants have standing to raise the

5

disqualification issue." In re Pressman-Gutman Co., 459 F.3d 383, 401 n.20 (3d Cir. 2006). Finally, in In re Congoleum Corp., the Circuit conferred standing on non-client insurers to seek disqualification of their insured's "special counsel" in bankruptcy proceedings. 426 F.3d 675, 685-87 (3d Cir. 2005).

Santander's failure clearly to challenge Gamache's standing may well waive the issue. See In re Pressman-Gutman Co., 459 F.3d at 401 & n.20. In an abundance of caution, however, I will assume *arguendo* that the standing issue is before me. Like the Third Circuit itself, the many courts that have addressed the issue are divided.

*Standing Allowed*

Extending the prevalent rule requiring lawyers to report ethical violations, three Circuits and numerous lower courts have conferred standing on non-client litigants to seek opposing counsel's disqualification. For instance, in Kevlik v. Goldstein, the First Circuit permitted the civil rights plaintiff suing the police to seek the defendant firm's disqualification where the firm had previously represented one of the individuals with whom the plaintiff had been arrested in a related criminal action. 724 F.2d 844, 847 (1st Cir. 1984). The Court explained that the applicable ethical rule required "an attorney [to] come forward if he has knowledge of an actual or potential violation of a Disciplinary Rule." Id. at 847. It was thus "evident that the disqualification motion, although in the name of the plaintiff[], was actually brought by" the plaintiff's attorney, who knew that the defendant firm had abrogated its duty of confidentiality to its former client. Id. The Fourth and Fifth Circuits have ruled similarly. See United States v. Clarkson, 567 F.2d 270, 271 n.1 (4th Cir. 1977) (Government had standing to seek attorney's disqualification because "any member of the bar aware of the facts justifying a disqualification of counsel is obligated to call it to the attention of the court" (citing Estate Theatres, Inc. v.

6

Columbia Pictures Indus., Inc., 345 F. Supp. 93, 98 (S.D.N.Y. 1972)); Brown & Williamson Tobacco Corp. v. Daniel Intern. Corp., 563 F.2d 671, 673 (5th Cir. 1977) (on disqualification motion challenging attorney's concurrent representation of two parties in multiparty dispute, Court concluded that "appellant has standing to seek disqualification even though it is not an aggrieved client because its attorneys are authorized to report any ethical violations committed in the case." (citing In re Gopman, 531 F.2d 262, 265-66 (5th Cir. 1976)); see also generally Standing of Person, Other of Former Client, to Seek Disqualification of Attorney in Civil Action, 72 A.L.R.6th 563 (2012) (collecting cases).

A majority of Courts in this Circuit to address the issue have found that a non-client has standing to seek opposing counsel's disqualification. See Bosh v. Renco Grp., Inc., No. 16-190, 2016 WL 3633079, at *4 (W.D. Pa. July 7, 2016); Cafaro v. HMC Intern., LLC, No. 07-2793, 2012 WL 4857763, at *6 n.8 (D.N.J. Oct. 11, 2012); In re Kirchner, No. 09-19636, 2010 WL 1855861, at *2 (Bankr. E.D. Pa. May 5, 2010); In re Pittsburgh Corning Corp., 308 B.R. 716, 721 (Bankr. W.D. Pa. 2004); Essex County Jail Annex Inmates v. Treffinger, 18 F. Supp. 2d 418, 431 (D.N.J. 1998); Schifli Embroidery Workers Pension Fund v. Ryan, Beck & Co., No. 91-5433, 1994 WL 62124, at *2-3 (D.N.J. Feb. 23, 1994); Pa. Water Works Supply Co. v. Bucks County Bank & Trust. Co., No. 91-2814, 1991 WL 161473, at *2 (E.D.Pa. Aug. 19, 1991); Duca v. Raymark Indus., 663 F. Supp. 184, 188 (E.D. Pa. 1986).

*Standing Refused*

Another line of authority, which courts and commentators have (perhaps incorrectly) dubbed the "majority view," holds that non-clients usually do not have standing to seek the opposing counsel's disqualification. See Colyer v. Smith, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999); Douglas R. Richmond, The Rude Question of Standing in Attorney Disqualification

7

Disputes, 25 Am. J. Trial Advoc. 17, 34 (2001). The leading decision is In re Yarn Processing Patent Validity Litigation, 530 F.2d 83 (5th Cir. 1976). The defendant company moved to disqualify plaintiff's counsel because his firm had previously represented a co-defendant in a related patent dispute. Id. at 85-86. The Fifth Circuit noted that courts usually will not remove an attorney on conflict grounds, "unless the former client moves for disqualification." Id. at 88. The Court explained that permitting former clients to seek disqualification serves to "aid the frank exchange between attorney and client" by "helping to preclude even the possibility that information given in confidence by the former client will be used without the client's consent." Id. This concern was inapplicable where the former client does not object to the representation. Id. Further, like virtually all other courts, the Fifth Circuit had long held that once the moving party showed that the prior and present matters were substantially related, this triggered a presumption that "confidences potentially damaging to the client" were disclosed to the challenged attorney in the prior matter, and that the attorney's firm shared those confidences, compelling its disqualification. Id. at 89. Allowing a non-client to seek disqualification would "place in the hands of the unauthorized surrogate [those] powerful presumptions which are inappropriate in his hands." Id. at 90.

The Seventh Circuit has reasoned similarly, as have the Second, Sixth, and Ninth Circuits in *dicta*. See United States v. Rogers, 9 F.3d 1025, 1031 (2d Cir. 1993) (citing Yarn Processing, 530 F.2d at 88); In re Sandhal, 980 F.2d 1118, 1121 (7th Cir. 1992) ("[Non-client] has no standing to assert [former client's] rights to [firm's] 'absolute loyalty.'"). The Federal Circuit has also denied standing to a non-client, basing its decision on the ABA's Code of Professional Responsibility. Telectronics Proprietary, ltd. v. Medtronic, Inc., 836 F.2d 1332, 1336 (Fed. Cir. 1988); see also Schneider v. County of Will, 123 F. App'x 715, at *2 (7th Cir. 2005) (plaintiff

lacked standing to disqualify defendant's attorneys because they could not "show that the private law firm's representation of the [defendants] harmed them in any way"); Kovacevich v. Kent State University, 224 F.3d 806, 833 (6th Cir. 2000); Kasza v. Browner, 133 F.3d 1159, 1171 (9th Cir. 1998); Melamed v. ITT Continental Baking Co., 592 F.2d 290, 294 (6th Cir. 1979); see generally Standing of Person, Other of Former Client, to Seek Disqualification of Attorney in Civil Action, 72 A.L.R.6th 563 (2012) (collecting cases).

A minority of Courts in this Circuit—apparently following the In re Corn Derivatives assumption and ignoring the conflicting Pressman assumption and Congoleum ruling—have also concluded that a non-client lacked standing to seek opposing counsel's disqualification. See Prosser v. Nat'l Rural Utilities Co-op. Fin. Corp., No. 08-107, 2009 WL 1605637, at *3 (D.V.I. Jun. 8, 2009); Shire Laboratories Inc. v. Nostrum Pharms., Inc., No. 03-4436, 2006 WL 2129482, at *4 (D.N.J. July 26, 2006).

*Constitutional Considerations*

The Third Circuit has observed that "[s]tanding implicates both constitutional and prudential limitations on the jurisdiction of federal courts." Reilly v. Ceridian Corp., 664 F.3d 38, 41 (3d Cir. 2011). Although the decisions I have already discussed appear to be based exclusively on prudential concerns, Courts have also conducted explicitly constitutional analyses when evaluating motions to disqualify. Compare Yarn Processing, 530 F.2d at 85, with O'Connor v. Jones, 946 F.2d 1395, 1400 (8th Cir. 1991); see generally Ivy Johnson, Standing to Raise a Conflict of Interest, 23 N. Ill. U. L. Rev. 1, 15-21 (2002) (contrasting the "strict rule" with the "constitutional standing analysis").

In Colyer v. Smith, Judge Timlin clearly set out the constitutional limitations on non-clients seeking disqualification of opposing counsel:

9

> It seems clear to this Court that a non-client litigant must establish a personal stake in the motion to disqualify sufficient to satisfy the 'irreducible constitutional minimum' of Article III. Generally, only the former or current client will have such a stake in a conflict of interest dispute.

50 F. Supp. 2d 966, 972 (C.D. Cal. 1999); accord S.E.C. v. King Chuen Tang, 831 F. Supp. 2d 1130, 1142-43 (N.D. Cal. 2011); So v. Land Base, LLC, No. 08-3336, 2010 WL 3075641, at *2-4 (C.D. Cal. Aug. 4, 2010); Cauderlier & Assocs., Inc. v. Zambrana, No. 05-1653, 2006 WL 3445493, at *3 (D.D.C. Oct. 6, 2006).

*Standing—Merits*

Under a prudential or a constitutional analysis, Gamache's standing is questionable, at best. I do not think that counsel's obligation to report violations of the Pennsylvania Rules of Professional Conduct is sufficient to confer standing. Rule 8.3(a) does not require an attorney to report all ethical violations, only those that "that raise[] a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer." Pa. R.P.C. 8.3(a); accord Appeal of Infotechnology, 582 A.2d 215, 219 (Del. 1990) (identical Delaware Rule of Professional Conduct 8.3 "requires lawyers to report only violations raising 'substantial' questions about a lawyer's 'honesty, trustworthiness, or fitness'"). Gamache's challenge does not raise *any* question—much less a substantial question—respecting Belcher Fitzgerald's honesty, trustworthiness, or fitness.

Moreover, the Rule requires attorneys to report misconduct to the "appropriate professional authority." Pa. R.P.C. 8.3.(a). The comments underscore that this "authority" is not the court:

> A report should be made to the bar disciplinary agency unless some other agency, such as a peer review agency, is more appropriate in the circumstances.

Pa. R.P.C. 8.3 cmt. 5; accord Appeal of Infotechnology, 582 A.2d at 219 (identical Delaware

Rule of Conduct "only requires the lawyer to report violations to 'the appropriate professional authority' and not to a tribunal").

In these circumstances, I doubt that Rule 8.3 confers standing on non-clients to challenge an opposing party's choice of counsel. See In re Gress, No. 13-6202, 2015 WL 1744165, at *3-4 (Bankr. M.D. Pa. Apr. 14, 2015) ("premising standing to seek Counsel's disqualification before this Court on a lawyer's duty to report violations of the ethical rules to the disciplinary agency may be stretching the bounds of standing further than the rationale extends"). This is particularly true because, as I discuss below, Gamache has not identified any ethical violations committed by the Belcher firm that could be used to support an invocation of standing under Kevlik.

Although the Congoleum Court conferred standing on a non-client insurers to seek disqualification of their insured's "special counsel" in bankruptcy proceedings, its decision turned on the insurers' unique ethical obligations, bankruptcy court practices, and the conflict of interest created by special counsel's retention. 426 F.3d at 685-87. None of these considerations applies here.

Finally, as I discuss below, Gamache has not remotely demonstrated "a personal stake in the motion to disqualify sufficient to satisfy the 'irreducible constitutional minimum' of Article III." Colyer, 50 F. Supp. 2d at 972.

Having considered this wealth of authority, I would be inclined to deny non-client Gamache standing to challenge the Belcher firms' representation of Santander. Because the law in this area is less than clear, however, I will assume, *arguendo*, that non-client Gamache has such standing.

### B. Court's Authority

Although neither Party has mentioned it, the Belcher lawyers are not members of the bar

of this Court and have not yet moved for *pro hac* admission. I will assume this failure was an inadvertent oversight, because the firm has actively participated in the litigation before me by directly communicating with its client, and authoring pleadings, legal memoranda, and affidavits. (See Doc. Nos. 1, 4, 18; Belcher Aff. ¶ 4); Gsell v. Rubin & Yates, LLC, 41 F. Supp. 3d 443, 450 (E.D. Pa. 2014). But see Local R. Civ. P. 85.3.2(b) (requiring *pro hac* admission before counsel may participate in litigation). I will again assume, *arguendo*, that the firm's active participation in this litigation subjects it to my "inherent authority to supervise the professional conduct of attorneys" appearing before me. Miller, 624 F.2d at 1201.

### C. No Showing of a Substantial Relationship

Gamache seeks to make out a "substantial relationship" both through the claims Santander has brought against Gamache—which are included in the instant Complaint—and its claims against Citizens—which it has raised only in the FINRA arbitration. It seems doubtful, at best, to base a disqualification motion on claims that are not before the Court. Once again, however, because Santander has not made this argument, I will not address it further.

The gravamen of Gamache's Motion is that because the Belcher firm had represented Citizens in unfair competition matters, the instant unfair competition dispute perforce is substantially related to that prior representation. Such tortured reasoning would preclude the Belcher firm from *ever* opposing Citizens in such matters. This is simply incorrect. Under Pennsylvania law, "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Pa. R.P.C. 1.09 cmt. 3; See Commonwewalth v. Shaffer, No. 1713-2005, 2016 WL 6243315, at *3 (Pa. Super. Sept. 28, 2016) (non-precedential).

12

This inquiry focuses on three areas:

1. What is the nature and scope of the prior representation at issue?

2. What is the nature of the present lawsuit against the former client?

3. In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?

AgSaver LLC, 2011 WL 2274178, at *4; see, e.g., Graham Co. v. Stanton T. Griffin & Connor Strong Cos., Inc., No. 08-1394, 2009 WL 3646348, at *6 (E.D. Pa. Nov. 3, 2009); Henry, 2001 WL 1003224, at *2; Graphix Hot Line, 808 F. Supp. at 1204; INA Underwriters Ins. Co. v. Nalibotsky, 594 F. Supp. 119, 1206 (E.D. Pa. 1984); Realco Servs., Inc. v. Holt, 479 F. Supp. 867, 871 (E.D. Pa. 1979); see also American Roller Co. v. Budinger, 513 F.2d 982, 984 (3d Cir. 1975); Richardson v. Hamilton Intern. Corp., 469 F.2d 1382, 1385 (3d Cir. 1972).

It is apparent that the Belcher firm's current representation of Santander is not substantially related to its prior representation of Citizens. The resolution of this dispute turns largely on the conduct of Gamache alone. Santander's contract claims require the company to show that Gamache misappropriated its customer lists and solicited Santander clients after joining Citizens. (See Verified Compl., Ex. A, §§ 8.2, 8.3, Ex. B, §§ 7(b), 8(b).) Santander's tort and statute claims before me require the same showing. (See Verified Compl. ¶ 63 (alleging that "Gamache breached his fiduciary duties . . . by (a) misappropriating [Santander's] confidential client lists . . . [and] (b) arranging for the solicitation . . . of Santander customers"; id. ¶ 70 ("The disclosure and use of [confidential] information constitutes a misappropriation of trade secrets"); id. ¶ 73 (use of confidential information constitutes unfair competition); id. ¶ 79 ("[Gamache] misappropriated [Santander's] trade secret client list" in violation of Defend Trade Secrets Act)); 18 U.S.C. § 1836(b)(1) (DTSA provides right of action to "[a]n owner of a trade

13

secret that is misappropriated"); Moore v. Kulicke & Soffa Indus., Inc., 318 F.3d 561, 566 (3d Cir. 2003) (breach of Pennsylvania Uniform Trade Secrets Act requires plaintiff to show "use of the trade secret in violation" of a confidential relationship).

Santander's arbitration claims against Citizens similarly require the company to show that Citizens misappropriated confidential information and induced Gamache to solicit customers. (See Belcher Aff. Ex. 1, ¶ 68 ("Respondents have wrongfully obtained and are using [confidential] information to compete with [Santander]" in violation of the PTSA and DTSA); id. ¶ 72 (Respondents' misappropriation of confidential information constitutes unfair competition); id. ¶ 76 ("Citizens knowingly, intentionally, and wrongfully interfered with [Santander's] contractual relations by inducing and facilitating a third party, Gamache, to violate his contractual obligations"); id. ¶ 79 ("Gamache and Citizens have been unjustly enriched in their receipt of . . . compensation with respect to Santander clients wrongfully solicited and otherwise diverted to Citizens and Gamache").) These contentions underscore the "unrelatedness" of the Belcher firm's earlier representation of Citizens.

As Gamache implicitly concedes, whatever confidential information the Belcher firm learned during its prior representation of Citizens is unrelated to Gamache. (See Def's Br., Doc. No. 15-1, at 1-2.) Indeed, because Citizens terminated the Belcher firm in mid-2015—over a year before it hired Gamache—the firm could not have learned any confidential information regarding Gamache, his alleged misappropriation of confidential information, his solicitation of Santander's customers, or his communications with Citizens. On the contrary, the trade secret information, customer lists, customer financial information, and the like learned by the firm relate to the business practices of Citizens. These are general business practices that have nothing to do with Gamache's purported misappropriation of Santander information, his

14

purported solicitation of Santander's customers, or Citizens' purported efforts to induce such misappropriation and solicitation. See Pa. R.P.C. 1.09 cmt. 3 ("[G]eneral knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation"); AgSaver LLC, 2011 WL 2274178, at *6; Graham Co., 2009 WL 3646348, at *6; Nalibotsky, 594 F. Supp. at 1210.

The Belcher firm's knowledge of Citizens' "methods of negotiating settlements," "litigation strategies," and litigation "playbook" also does not warrant disqualification. Indeed, this knowledge does not preclude the firm from undertaking factually distinct representations adverse to Citizens. See Pa. R.P.C. 1.09 cmt. 2 ("[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client."); Wisdom v. Phila. Hous. Auth., No. 02-8369, 2003 WL 303945, at *1 (E.D. Pa. Feb. 12, 2003) (denying motion to disqualify because counsel's "knowledge of [party's] general approach and strategy as to landlord-tenant litigation matters . . . would likely be irrelevant to the instant case [because this case] seemingly involves only [specific] factual issues"); Blaylock v. Phila. Hous. Auth., No. 02-8251, 2003 WL 928500, at *2 (E.D. Pa. Mar. 5, 2003) (similar); cf. Jordan 337 F. Supp. 2d at 675 (granting motion to disqualify because moving party "point[ed] to a specific case . . . where [counsel] might have obtained confiden[tial information] relevant to [nonmoving party's] claim").

In sum, Gamache has failed to show that the Belcher firm's prior representation of Citizens is substantially related to its current representation of Santander.

## V. CONCLUSION

Assuming Gamache has standing, he has not identified *any* confidential information that

the Belcher firm obtained through its representation of Citizens that is related to this dispute or that would harm him or Citizens in this dispute. Gamache's effort is thus without any legal basis. Rather, it suggests only that Citizens, faced with a compelling unfair competition accusation and irate that its former counsel will represent Santander in the upcoming FINRA arbitration, disingenuously seeks to hobble Santander at the outset of that proceeding. See In re Congoleum Corp., 426 F.3d 675, 686 (3d Cir. 2005) (noting "concerns about the tactical use of disqualification motions to harass opposing counsel"); Xcentric Ventures, LLC v. Stanley, No. 07-954, 2007 WL 2177323, at *2 (D. Ariz. July 27, 2007) (denying motion to disqualify because "the conflict-of-interest arguments are designed simply to increase Plaintiffs' costs and interfere with their ability to pursue their claims").

In these circumstances, I will deny Gamache's motion to disqualify Belcher Fitzgerald.

An appropriate Order follows.

*/s/ Paul S. Diamond*

April 3, 2017                                                                   Paul S. Diamond, J.